Our final case for argument this morning is Dennis v. Fitzsimons, and we're ready to hear from the appellant. May it please the Court, good morning. My name is Ralph LaMoure, and I represent Jared Dennis in his case against Jamie Fitzsimons, the Sheriff of Summit County. This case has interesting implications, very unusual ones. The ADA, alcoholism was not excluded from the protections to people with disabilities. There has been a series of cases that have interpreted the ADA's specific rule, giving a defense to an employer that when they enforce their workplace rules, an individual who suffers from alcoholism and who violates those rules is not protected by the ADA. However, that is a defense. That is not meant to short circuit the McDonnell-Douglas paradigm. In fact, all the cases so far that I have come across have dealt with situations where individuals were actually guilty of breaking their employer's workplace rules, and in most cases, not all, but in most, they had no comparators with which to show that the employer was not enforcing its workplace rules evenly. In this case, Mr. Dennis has both. When he was drinking with Deputy Pierce the night before, he was in an off-duty status. The district court acknowledged that off-duty conduct that involves alcohol is not necessarily going to prevent a person with alcoholism from proceeding with a case, and yet the district court found that Commander Mumford and Sheriff Fitzsimons and the undersheriff had a reasonable good faith belief that Deputy Dennis had engaged in misconduct because they claim he was on duty when he was being arraigned. But that's actually a fact finding by the district court that's not entitled to do at summary judgment process. So with regard to the prima facie case in which- Do you have a letter, I believe in this record, that or some communication with your client as to when his duty hours were and that when he was arraigned, that was within his duty hours? Well, Your Honor, the actual record evidence is that when Deputy Dennis was told the day before his arraignment by Commander Mumford that he was going to be placed on administrative leave, what he was told was, call me when the arraignment is done, and then I will tell you where your duty station will be during your administrative leave. And it is a reasonable, factual inference by a jury that Deputy Dennis was not on the clock when he was being arraigned for charges that arose from his personal life. He was being charged with spousal abuse and child abuse by his soon-to-be ex-wife. I thought the phraseology was that Dennis was to call on duty at 9 a.m. So that says to me, on duty is on duty. Your Honor, he was in the process of being arraigned and a jury could find, based upon Deputy Dennis's testimony, that he wasn't actually going to be on duty until his arraignment was completed. There was no way of knowing when that arraignment was to be completed. Of course, it was because of his own conduct and the fact that he was intoxicated that the arraignment wasn't completed on the day it was supposed to be completed. There may be some question about time, but the fact is, they were ready to go forward with the arraignment, but they continued to test him and he continued to be above the limit for several hours into the day and eventually they had to call it off and they couldn't arraign him until the following day on the 29th. So, why can't we infer that his own conduct was the reason he couldn't be on duty on July 28th as the letter required from 0900 hours to 1700 hours? Well, Your Honor, that's what a jury could infer once they hear the facts, but from the perspective of summary judgment, it's not an onerous burden. Mr. Dennis's drinking was done the night before. That's not my point. I guess I'm not making, I apologize, I didn't make myself clear. I don't think we have to infer anything. We know for a fact that it was Mr. Dennis's conduct and his blood alcohol level in particular that was the reason why he could not be arraigned the entire day on July 29th when he was supposed to be arraigned that morning and check in after that. We know that for a fact. That can't be the responsibility of his employer, that aspect of it, correct? He was charged with certain violations that are not established in the record. That's not what I'm asking you. Well, he was charged with four violations, two of which there's no evidence in the record on a summary judgment basis that the employer is entitled to judgment as a matter of law and those aspects are consuming alcohol or intoxicants for a period of eight hours before going on duty. There's no evidence record, evidence in the record that he did. He anticipated going on duty after his arraignment, which didn't occur because of his blood alcohol level and one of the four aspects of conduct for which he was terminated was he shall not consume alcohol to such a degree it impairs his on-duty performance. In your honor... What fact question is there about whether that consumption of alcohol would have impaired his on-duty performance had he returned to duty as he was supposed to? But Deputy Pierce told Commander Mumford that there was no evidence that Deputy Dennis was normally, legally, he would be allowed to drive. Deputy Pierce said, I couldn't tell that he was impaired and I have spent... Was he allowed? Was Mr. Dennis allowed on a regular day when he wasn't being arraigned? Was he allowed to come to work with a blood alcohol level over the legal limit and drive? No, he wasn't, your honor. And neither was Pierce. This isn't about... I'm not asking about Pierce. I'm asking you right now about Mr. Dennis. I understand. But from the perspective of the prima facie case, it is not an onerous burden. And if the court makes decisions about what the employer's reasons were for the termination, then they've short-circuited the process. And in fact, US Postal Service versus Akins states that we don't give the employer's non-discriminatory reason until step two, after the prima facie case has been made. And Ortiz versus Norton reflects the same idea, is that you have to be allowed to present comparators at the initial stage. And if the treatment of comparators is so narrowly conscripted, then it basically shortcuts and you don't have the ability to prove pretext. And here's a case- What you're saying, because you're using some different terms here. I think what you're saying is that your use of comparator evidence should come in at the prima facie stage to prove the inference of discrimination, that you can use it at the prima facie stage. That's correct, your honor. Okay. Okay. Just wanted to make sure. Okay. And here's a case that hasn't been briefed yet. It came up after the reply brief, and I have not had a chance to bring it to the court's attention. But Bostock versus Clayton County basically said that- If you want to file a 28J letter and give us the site to this case that you're now discussing. I will be happy to do so, your honor. Thank you. But go ahead. Plaintiffs no longer have to prove that every single reason given by the employer is false. Under Bostock, all you have to show is that the but-for of the protected characteristic or the protected aspect. If that hadn't been involved, the adverse employment action wouldn't have been taken. And here we have a comparator who did the exact same thing as Deputy Dennis. They drank glass for glass the night before. They stopped drinking at 11 o'clock. Aren't you really getting into the pretext phase of the analysis? I am, your honor. I think this case begins and ends, according to the district court, at the prima facie level. And the point there was your client is not disabled, does not have a disability under the ADA. That is not what she held, your honor. And I respectfully disagree. The ADA does not preclude alcoholics from being protected. If you're talking about alcoholism as a status, but if you do something when you're drunk, that is conduct. That is not protected because you now want to allege you're an alcoholic and you have alcoholism. Your honor, what gets lost in all of this is that 42 USC section 12114C4 states that employers have this defense only if they actually enforce their workplace rules evenly with regard to all employees. So when the employer gets a chance to say conduct, the district court is not entitled to short circuit the prima facie case and say, well, he's clearly guilty of it. In fact, when the district court said that Mumford reasonably believed that Dennis was supposed to be on duty, she made a factual finding. And that was not to be in favor of the employer. And when the employer makes a defense, which actually wasn't articulated by the employer in this case, but when the employer says we had a reasonable good faith belief, that automatically involves the concept of pretext. The employee should be able to challenge the validity or the accuracy of the employer's quote unquote position that we reasonably believed something. Now in this case, what was vitally important that seemed to have been missed by the district court is that the whole reason Pierce wasn't even tested was because he had been drinking in his off duty capacity. And yet if they'd done the investigation, and we know that from Trujillo versus Pacific Corp and Smothers versus Solvay, a failure to investigate constitutes evidence of pretext. So they didn't do an investigation. If they had, they would have found out. How do we know that's why they didn't test him? It's in the record, your honor, because where is it? Tell me how it came up. I don't know the exact citation, your honor, but it's in my testimony. Yes. It's in the primary brief. I asked Commander Mumford why he didn't test Pierce, and he said that was because it was off duty conduct. So they had two people who engaged in the same behavior. Oh, and here's the other part. The whiskey walks. They had engaged in whiskey walks for more than a year, and everyone knew that they got drunk when they drank together. So everybody in the command staff knew that these were two drinking buddies who got drunk when they drank together, and neither of them appeared to be impaired. So they were as close to an identical comparator as possible, and yet Commander Mumford said, I'm not going to test him because he was drinking on his free time. So a jury, and I grew up in less than stellar circumstances, but a jury could say baloney when they hear the story of the sheriff's department about why they subjected Pierce to no test, no discipline, even though he drove Dennis the next morning. And I see I'm running out of time, so I'd like to reserve the remainder for rebuttal if you don't have any current questions. I have a factual question for you. What was the timing of the decision not to test? When did they have information that might have put them on notice that they needed to test? It was that morning, Your Honor. Can you do better than that? Because as we can see from the plaintiff, the blood alcohol tends to go down. It does, Your Honor. But Pierce went to the sheriff's department after he dropped Dennis off at the Park County Sheriff's for the arraignment and went into work. And there was a one or two hour period there in the morning between 8 and 10 when Pierce spoke with Mumford. Fitzsimons, Cochran, and Mumford had phone conferences. So at any point in time there, Mumford could have chosen to do so, but chose not to. I mean, I guess I'm just trying to, you know, flesh it out a little bit. What time does the record show they knew that your client didn't make it to his or was too late? My belief is that it was about 8.30. I don't know that it's in either of the briefs and Mr. Marks can answer that question maybe a little more accurately than me, but I believe it was early in the morning. Thank you. Okay. Thank you. We're ready to hear from the appellee. Good morning, Your Honor. Josh Marks on behalf of Sheriff Jamie Fitzsimons. I want to make sure, can everybody hear me? Yes. Thank you. I had some issues with my computer mic earlier this morning. That's why I asked. So what I'd like to do is jump right in on the last question that was asked about Sergeant Pierce. Some of this is not very well set forth in the record below in terms of Sergeant Pierce's drinking, but what we do know is that at the time that the Sheriff's office got information about Sergeant Pierce's drinking, it was very unspecific. It was after it had been told that Sergeant Dennis couldn't make his arraignment by the neighboring county. So it was after 10 o'clock in the morning. And at that point, there was a meeting about what to do with Mr. Dennis where Sergeant Pierce admitted that he and Dennis said that he had consumed alcohol that night, but there was no information about how much alcohol that Sergeant Pierce had consumed available to the Sheriff's office. The information that Dennis's counsel is telling you comes from Mr. Dennis's deposition testimony, which was obtained months later. It was not available to the Sheriff's management. So it had no idea how much, you know, Mr. Sergeant Pierce had drunk. And as the district court determined and noted that Sergeant Pierce was acting normally that morning, had no overt signs of impairment. So there wasn't any conscious decision, oh, we need to test this guy too. It was just apparent that he hadn't violated any workplace rule because he wasn't impaired. Do we know, I mean, I'm not sure I understand why that's even material. It should be. We don't know whether Sergeant Dennis was acting impaired at 7 a.m. either. Why is that material? I mean, the question is, should they have, knowing what they knew about Sergeant Pierce, the fact that he drove Sergeant Dennis at 7 a.m. to his arraignment, and knowing that they had both drank together the night before, why isn't that relevant in terms of trying to establish that inference of discrimination that you have to establish at the prima facie stage? And the district court did consider this at the prima facie stage. I know it did. I don't think it is relevant to a prima facie case, especially given that what I call Section 114C, that the employer proved that it was violated in two respects. One was that Mr. Sergeant Dennis was impaired while at work. And then secondly, that he had violated workplace conduct rules. Right, but the burden on the plaintiff is to show that despite the fact that you're saying that this was the reason for his termination, and despite the fact that we have the car-bound exception, he's still entitled to bring an ADA claim and try to prove that what you're saying is not actually what you did, that you're not telling the truth, essentially. And he's suggesting that he can do that with this comparator evidence. And we have several cases that have held that comparator evidence can be admissible to prove an inference at the prima facie stage. And I guess I'm asking you to tell me exactly why, assuming that evidence should come in at this stage, why it's not acceptable comparator evidence. Well, it creates a question of fact, I should say. Well, I don't think it does. I'm sorry, to get you past the prima facie case. The district court found it wasn't that the two weren't comparable. And for two basic reasons, and they're very, very important. One, they didn't have a test result. They had no objective way to understand that Sergeant Pierce was impaired. So they couldn't bring disciplinary action against Sergeant Pierce. And they didn't have a reasonable basis to test him because he had no outward indications of being impaired. And then secondly, unlike Sergeant Dennis, whose conduct failed, you know, made him unavailable for work and to be on the status that he was supposed to be on, you know, Sergeant Pierce showed up for work and was fully able to function at work and was available to, you know, for the department. And those are two very important facts that are hugely distinguishing between the two individuals. So the district court was, even if it is part of the prima facie case, which I don't think it is, but people could disagree, they're not comparators for those very important distinctive reasons. So the fact that he showed up at work and was able to get himself to work because he wasn't going to an arraignment and he appeared normal was, you know, good enough reason to make him not a comparator in this case. That's correct. They couldn't, with the information they knew, they couldn't possibly charge him with the same policy violation. I'm just talking about letting him be at work if they suspected he might be intoxicated because that was one of the reasons that they terminated Mr. Dennis, is because he would have been on duty while under the influence essentially. And presumably so would Mr. Dennis have been on duty while being under the influence. I mean, Mr. Pierce, Sergeant Pierce. Yeah, I mean, and again, the big distinguishing factor is they had an objective test to be able to measure the level that he was impaired. They presumably administer blood alcohol tests to sheriff's officers occasionally, right? They could have administered, did they have the capacity to administer one? Well, yeah, it's a law enforcement agency and the jail would have had an intoxilizer. I'm talking about Sergeant Pierce. Yeah, I mean, they could have certainly administered one had they wanted to to make sure he also was not intoxicated. Yeah, but they would have had some indication of impairment level, sure. You didn't move, your motion in the district court was only for summary judgment based on the failure to make out a prima facie case. It looked to me like you didn't move for summary judgment. Presuming he gets past the prima facie case, you didn't talk about pretext in that motion. You didn't seek summary judgment on that basis. Correct. We said that the prima facie case could not be met here at both the second and the third elements of the prima facie case. So if we disagreed with you, you don't really have an alternative argument that alternatively you've put forth legitimate nondiscriminatory reasons, met your burden, and there's no evidence of pretext. Well, I mean, we would move, ultimately we would be able to move forward. On remand, you could move forward. Is that what you're saying? Yes. Correct. The other point I want to make in the time that I have as well is that, you know, Congress made this carve out for a reason that it indicated it didn't want alcoholic employees to be in a favored status over regular employees who violate workplace conduct rules and performance standards. And hence, they created Section 114C-4 for that very reason. And this is why. And so it created this level of protection or non-protection for this category of folks. And here, there isn't a disputed fact that the facts that underlie the sheriff's office termination of Mr. Dennis, of Sergeant Dennis, are undisputed. As Judge Merce pointed out earlier, I mean, Dennis admits that he was drinking the night before. He admits there's no dispute as to the impairment level that was measured by the machines at the jail at 9 o'clock when he was told he was supposed to be on call and available for duty on his unpaid status. So he's undisputedly impaired at work. You know, Dennis wants to argue that that's not a violation, but that's not a disputed fact that underlies the employer's defense here. And it's undisputed that because of his impairment level, he had to stay in custody an additional 24 hours, couldn't move through the arraignment process quickly. And it's undisputed that the sheriff had grounds to discipline and terminate him for conduct that brought himself and the department in disrepute, which was one of the policy violations. His conduct demonstrated a disregard for the integrity of the judicial system and the neighboring and the relationship with the neighboring jurisdiction. Sergeant Dennis was a detective sergeant, and a lot of times their cases go beyond jurisdictional boundaries to neighboring jurisdictions like Park County. So the sheriff had, you know, the sheriff's ability to impose that off-conduct, the off-duty conduct rule here was absolutely appropriate. And whether Mr. Dennis, you know, disagrees with that doesn't create the disputed issue. So we believe that the trial court got it right. It properly applied the exception in 114C4 because there was no underlying disputed fact. This would be a different case if any of the things that I had mentioned were disputed, but they weren't. Those things happened. This would be a different case if Sergeant Dennis contended that what he did was unrelated to his disability. But they weren't. I was wrong when I said that the court did not accept alcoholism as a disability or that he was disabled. He did. She did. The point then ultimately is what you're getting to, that he was not terminated because of the disability, but rather because of his conduct. Yes. Yes. And this case is really similar to one of the cases I cited called Little v. FBI. It was a Fourth Circuit case back in the 1990s. And there the terminated employee made a very similar argument to what Mr. Dennis is arguing here. In that case, the employee was terminated for being impaired while on duty. The employee said, well, I'm really being terminated for my status, not for being drunk on duty. And the Fourth Circuit said, no, here's why. You admitted that you were drunk on duty to the underlying facts. The letter of termination references that conduct. And that's enough. That undisputedly shows that you were terminated by virtue of your conduct, not based on your status. There's no difference functionally between what Dennis is arguing and what Mr. Little argued in the Fourth Circuit 20 years ago. Because if you don't have no further questions, I would urge that this court affirm the decision of the trial court on all grounds and allow the summary judgment in favor of Sheriff Fitzsimons to stand. Thank you. Thank you. You're still on mute, sir. Very quickly. Mr. Mark said that there was no evidence how much Deputy Pierce had consumed an alcohol. And that's because Commander Mumford didn't ask him. And the evidence is from Deputy Pierce himself who said how much he drank. So if Commander Mumford had asked, he would have learned how much alcohol he drank. So that's an important part. There was an objective. They could have done an investigation. But that's part of our pretext argument. Something that's very important, too, is that the Sheriff's Department shouldn't be allowed to create rules that are as subjective as saying you can't bring discredit to the agency. Because, in fact, the Tenth Circuit has held that subjective evidence can be considered pretext. And the Sheriff doesn't have the ability to basically say I have a rule that says no matter what you do at any time, if I think it brings discredit, I'm going to be able to fire you. That basically writes alcoholics without any protection at all if they work for the Sheriff of Summit County. Thank you. Thank you, counsel. We have your argument. You're out of time. Thank you both for your arguments this morning. The case is submitted.